The last case this morning is number 518-0192, People v. Taylor. Arguing for the appellant, Jovian Taylor, is Jennifer Lassie. Arguing for the appellee, People of the State of Illinois, is Valerie Osment. Each side will have up to 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings. Morning, counsel. Good morning. Are you ready to proceed, Ms. Lassie? Yes, your honor. Then go right ahead. May it please the court, counsel. I'm Jennifer Lassie with the Appellate Defender's Office on behalf of the defendant appellant, Mr. Jovian Taylor. The state has conceded that this case should be remanded for a new sentencing hearing as requested in argument 2, so I will only focus on argument 1 today. Mr. Taylor was denied his constitutional right to effective assistance where trial counsel failed to stipulate that Mr. Taylor had the requisite felonies for the armed habitual criminal charge and allowed the jury to hear the nature of Mr. Taylor's prior convictions. The state only advances two arguments. First, that trial counsel would not have been permitted to stipulate that Mr. Taylor had the requisite felonies, and the second being that Mr. Taylor was not prejudiced. As the case law in the reply brief establishes, McCurin and Adams, the state was not required to inform the jury of the nature of the prior convictions, and those cases established that stipulating is the least prejudicial means of establishing those convictions, and where the only purpose for admitting them was to prove to prove Mr. Taylor's felon status, the court would have been obligated to accept a stipulation had counsel done so, and counsel was ineffective for failing to do that. Jurors were told of the nature of Mr. Taylor's prior convictions and repeatedly reminded about them throughout the trial. Because of trial counsel's errors, the jury was told during voir dire that Mr. Taylor had been convicted of aggravated battery, great bodily harm, and that he had been convicted of unlawful delivery of a controlled substance and had been convicted of a forcible felony. During its opening statement, the state told jurors two separate times that Mr. Taylor had convictions including unlawful delivery of a controlled substance and a forcible felony of aggravated battery. The state admitted People's Exhibits 17 and 18 certified copies of Mr. Taylor's convictions for aggravated battery and delivery of controlled substance and showed those to jurors. People's Exhibit 18 showed that Mr. Taylor got three years for his aggravated battery sentence, and People's Exhibit 17 showed that Mr. Taylor had two charges of delivery of a controlled substance and that in exchange for pleading guilty, he was having additional felony and misdemeanor charges dismissed. During closing arguments, the state reminded jurors that the last piece of evidence they saw were those certified copies of the convictions, and multiple jury instructions reminded jurors that he had convictions for unlawful delivery of a controlled substance and aggravated battery. Council's failure to stipulate to these convictions allowed Mr. Taylor to be painted as a violent drug dealer before this jury, and the evidence here was not overwhelming. The evidence that Mr. Taylor actually possessed that gun was slim, and reasonable jurors might have inferred that he fled from police simply because he was driving under the influence and possessed marijuana. Huff saw Mr. Taylor's vehicle swerve and fell to stop at a stop sign, and Officer Huff said that Mr. Taylor fell down multiple times during the foot pursuit, which would suggest he was intoxicated. Upon searching his vehicle, the officers found a bottle of alcohol inside. Huff only saw Mr. Taylor throw the black bag and the cannabis, and contrary to the state's claims in its response brief, Officer Huff saw Mr. Taylor throw this in a different area than where the gun was found. Officer Huff saw Mr. Taylor throwing things in the backyard of 1604 Cherry Street, and the gun was found in between the houses at 423 and 425 South 17th Street, and it was closer to the house 423, the vacant home which still appeared vacant at the time of trial. There was no testimony regarding when anyone had last been in that yard. The state's argument heavily relies, at trial and on appeal, on the gun being warm when Officer Huff touched the gun. However, Officer Chapman was the first person to pick the gun up, and he did not notice whether the gun was warm. Chapman picked the gun up with the gloves that he carried in his back right pocket, which would presumably be warm from him sitting on them in his car and from them being in close proximity to his body. Now, Officer Huff testified that it was below freezing on this night, and as detailed in the reply brief, if Mr. Taylor possessed this gun, it would have to remain warm on this night when it was below freezing from the time that he dropped it at the beginning of the pursuit. It would have to remain warm throughout the police chase. It would have to stay warm while officers removed the taser probes from his body, while officers escorted him to the squad car, while officers backtracked the path of the foot pursuit starting at the end where he was arrested. The gun would have to remain warm while the officers moved along in the dark using flashlights to backtrack the foot pursuit, while they located first the bag and the cannabis, and the gun would have to remain warm while the officers photographed it, and it would have to remain warm while Huff went to his squad car and retrieved an evidence bag for the gun. And from the beginning of the Huff's dash cam footage, that his vehicle was parked at the scene for about an hour. So, the gun would have to remain warm on this below freezing night for a lengthy period of time for it to have been in Mr. Taylor's possession. The evidence that he actually possessed it here was slim. Officer Huff testified that Mr. Taylor was not wearing a coat or gloves, and forensic scientist and latent fingerprint expert Amy Hart was unable to find any prints on the gun, magazine, or cartridges in the gun. And Hart explained that sometimes prints cannot be found if an item is subjected to weather conditions such as sun or rain. How far was the gun from found from where Mr. Taylor fell? So, the gun was found where he one of the places he fell. He fell multiple times during the foot he could have simply tripped over the gun. It was in a yard next to a vacant home. And there's no evidence regarding when anyone was last in that yard. And the home still appeared vacant at the time of trial. The gun was also a distance from where officers actually, where Officer Huff actually saw Mr. Taylor throwing items. He fell in between 423 and 425 South 17th Street. But Officer Huff didn't see him throwing things until they passed through 423 and 425 and went through an alley and vacant lot and then came around to 1604 Cherry Street. And it was at 1604 Cherry Street that he was actually observed throwing items. So, again, as I was saying, fingerprint expert Amy Hart was unable to find any prints on the gun. And Mr. Taylor did not have any gloves on, according to Officer Huff. People's Exhibit 6 in the record shows the gun as officers found it. And it does not, that picture does not indicate how long the gun was there. The gun has brown leaves on top, on top of it, as well as a long blade of grass extending over the gun. And again, it was found near a vacant home that was still vacant at the time of trial. So, there just happened to be a gun where Mr. Taylor fell. There was no officer testimony where he was seen with a gun. Officers never saw him throwing the gun. And it would be reasonable to infer that he simply tripped over it. This is not overwhelming evidence of possession. And the evidence here was closely balanced. And counsel's failure to stipulate regarding the nature of Mr. Taylor's prior convictions allowed him to be painted as a violent drug offender, or a violent drug dealer, and could have very likely caused him to be found guilty in this case, in spite of the lack of evidence of possession. Now, jurors were given the impression that Mr. Taylor was a drug dealer with a lengthy criminal past and with violent crimes. Counsel's failure to stipulate absolutely prejudiced Mr. Taylor in this case. And unless your honors have any that you reverse and remand for a new trial as requested in argument one, or alternatively, that you reverse and remand for a new sentencing hearing as requested in argument two. Thank you, counsel. Obviously, you'll be given time for a rebuttal. Ms. Osmond, you prepared to proceed? Yes, your honor. Go right ahead. Thank you. Good morning again, your honors and counsel. May it please the court. My name is Jovon Taylor. Before I proceed with my argument, however, I want to inform the court that I did not write the state's opening brief in this case, and that this case was recently reassigned to me after the attorney who did write the state's opening brief left our office. However, obviously, I did read the record and all briefs filed herein. Thus, I will answer any questions that the court may have. To reiterate, the defendant is appealing from a final judgment resulting from his convictions following a jury trial for armed habitual criminal, unlawful possession of a weapon by a felon, and unlawful possession of a defaced firearm. The trial court sentenced the defendant to a term of 10 years in the Department of Corrections, and then this appeal followed. As opposing counsel stated, the defendant raised two arguments on appeal. However, the second issue, which the defendant framed as whether the defendant's sentence is the result of an improper double enhancement, where the trial court found the defendant's prior aggravated battery conviction to be a factor in aggravation at sentencing, even though that conviction was an element of the armed habitual criminal charge, was conceded in the state's opening brief, and as a result, the state asked that this court remand this case so that the trial court can conduct a proper sentencing hearing without using said convictions as an improper double enhancement and issuing its sentence. As such, the sole remaining issue before this court is whether the defendant was denied his defendant's felon status pursuant to the armed habitual criminal statute. For the following reasons, this court should affirm the defendant's convictions, but remand this case for the limited purpose of conducting a proper sentencing hearing. The defendant argues that his trial counsel was ineffective pursuant to Strickland versus Washington because his trial counsel did not stipulate to the defendant's felon status, being that the defendant's prior convictions for unlawful delivery of a controlled substance and aggravated battery. Although the state's opening brief argues that the defendant failed to establish that his trial counsel was ineffective pursuant to Strickland and addresses both prongs under Strickland, for purposes of my argument today, I will only be addressing the prejudice prong argument, and the state will rest on its brief regarding the remaining arguments made therein. The determination of whether the defendant's trial counsel is ineffective is reviewed de novo, and whether the defendant shall prevail on his claim that he was deprived of his effective assistance of counsel is guided by Strickland and adopted by Illinois Courts and People versus Albanese. To prevail under Strickland, the defendant must demonstrate that his counsel's performance was deficient and that the deficient performance so prejudiced the defendant that he was denied a fair trial. More specifically, the defendant must demonstrate both that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability that the result of the proceeding would have been different is a probability sufficient to undermine the confidence in the outcome of the proceeding. However, there's a strong presumption that counsel's action or inaction was a matter of trial strategy, and matters of trial strategy will not support any claims of ineffective assistance of counsel unless counsel's strategy is so unsound that he entirely fails to conduct any meaningful adversarial testing of the state's So there was a time when trial strategy may dictate that it's better to tell the jury what the offenses were so they don't speculate. Maybe this is a murder or drug kingpin, but hasn't the Illinois Supreme Court and People versus Moore eliminated that strategy? Doesn't Moore say that it's deficient not to stipulate? Not in this exact instance, Your Honor. There is no case law that actually mandates that counsel should stipulate under the armed habitual criminal statute because it's a requirement of the statute that they must prove as an element of the offense that the defendant has prior felony, specific prior felony convictions. And to the contrary, Your Honor, it actually might be more beneficial to not allow the jury to speculate because there's certain named offenses and some to a jury could be more dangerous or worse than others. For example, one of the crimes that's listed in the statute is called gun running. That to me, I don't, I'm not even sure what that means. So if I heard that over something else, then that to me might be less damaging to the defendant's case. So it could be trial strategy in this case for the defense counsel to go ahead and not stipulate and not allow the jury to speculate. Also, the defendants and effective assistance of counsel claim will fail if either prong in the Strickland test is not met. So with respect to prejudice, I would like to start out by saying it is well established that a defendant is entitled to a fair trial and not a perfect one. As such, the defendant is entitled to competent counsel, but not perfect representation. Only the most egregious of tactical or strategic blunders may provide a basis for a violation of the defendant's right to effective trial counsel. In this case, the defendant concedes in her brief that his claim of ineffectiveness depends on the conjecture and speculation of this court. Specifically, the defendant argues that the evidence presented through the state's witness testimony fails to and driving, not that the defendant had a firearm in his possession. However, Officer Brian Huff's testimony establishes that the defendant was observed committing traffic violations, and then the defendant chose to run from Huff rather than submit to the traffic stop. Huff was then forced to chase down and tase the defendant to detain him. During the foot chase, Huff observed the defendant throw multiple items to the ground, including cannabis and a black bag, which were later recovered. Huff, however, did not observe the defendant throw a gun, but Travis Chapman located a firearm in the area between two abandoned houses where the defendant had fallen during the foot chase. It's the defendant's burden to prove ineffectiveness, not based on speculation. However, in the state's view, it's reasonable for the jury to speculate that as part of the defendant throwing things as he was running from the police, that one of those items included this gun. Officer Huff noted that the firearm was still warm to the touch, though it was a chilly evening, suggesting recent possession and abandonment. The state admitted into evidence a photo of the firearm, which is at issue in this case as People's Exhibit 6. The defendant specifically attacks the witness's testimony, arguing that the evidence failed to prove the warm-to-touch firearm was the defendant's. However, People's Exhibit 6, if you take a close look at it, instead shows that the firearm had instead been sitting under some leaves between two abandoned homes when the defendant fell near it, and the firearm was only warm because the officers touched it and placed it into an evidence bag. However, the reasonable inference from this evidence is that the defendant had the firearm on his person when he exited the vehicle and initiated the foot chase. When the defendant fell, the firearm was dislodged and fell to the ground. The weight of the firearm caused it to sink slightly into the leaves rather than rest atop of them, as the defendant claims. The fact that there was a distance of 15 feet between the location of the gun and other objects found by the officers means very little other than the defendant was throwing these items piecemeal as he led the foot chase. So essentially, the defendant's argument lacks merit because he cannot prove the second prejudice prong of the Strickland standard, and unless your honors have any questions, the state would respectfully request that this court affirm the defendant's Thank you, Ms. Osment. Ms. Lassa, are you ready for your rebuttal? Yes, your honor. Go right ahead. Your honor asked if people versus Moore removed the idea that this could be a reasonable trial strategy, and your honor is correct on that point. The state is simply wrong on the status of the law. First, Old Chief and Walker established that in unlawful possession of a weapon cases, that it was prejudicial for jurors to learn the name and nature of a defendant's prior conviction, and the appellate court cases, McCurin and Adams addressed that counsel can stipulate in an armed habitual criminal case, and counsel, the state is not required to give that evidence to the jury, and in fact, contrary to what the state has just argued, in McCurin, at paragraph 41, the McCurin decision says, defendant acknowledges that he suffered no prejudice from the nature of his prior offenses, which were in this case, murder and burglary, because the stipulation removed that information from the jury, and the McCurin court cited that approvingly while also citing to Walker, so it's clear that in armed habitual criminal cases, counsel can and should stipulate to the nature of a defendant's prior conviction, and the state is simply wrong on that point. Next, the state is still citing to the warm gun and the photo of the gun, however, the testimony that the gun was warm was in no way overwhelming evidence, where the first officer to touch that gun did not notice it was warm, and touched it with the gloves he was wearing that had been in his back pocket close to his body while he was in his squad car, and when your officer, when your honors look at the photo, you can see that the gun, there's nothing about this photo that suggests recent possession by Mr. Taylor, there are brown leaves on top of the gun, there's some, you know, a blade of grass going over the gun, there's nothing either way to suggest whether that gun was there for minutes, hours, days, we have nothing, there's no testimony, you know, to support anything about the gun being there for a short period of time. Next, the state is arguing that its inferences regarding the evidence of the gun are reasonable, however, this court does not have to find that the state's argument is unreasonable, that we are not arguing that the evidence here was insufficient to prove Mr. Taylor guilty beyond a reasonable doubt, and if we were, the standard would be different. In a reasonable doubt case, we have to establish as the defendant, we have the burden to establish that no rational trier of fact would have found him guilty, but we're not making that argument here, this isn't a reasonable doubt argument, we're arguing that the evidence was close. Here, the evidence was closely balanced, the only thing for the jury to decide in this case was whether he possessed the gun, and that evidence was not overwhelming, he simply fell where the gun was, that's not overwhelming evidence of possession. So, this case was closely balanced, and counsel's failure to stipulate to the nature of these prior convictions allowed Mr. Taylor to be repeatedly painted as a violent drug dealer, and this error made a difference, it impacted the outcome of this case, and as this court noted in People v. Bryant, even if the evidence was sufficient to convict, counsel's mistakes here can require a new trial, and counsel's failure here did prejudice Mr. Taylor because it undermines confidence in the outcome of this case, it undermines confidence in the verdict, and because of counsel's failure, and because the evidence was so close, Mr. Taylor was denied his right to a fair trial, and unless your honors have questions, we would respectfully request a new trial based on argument one, or alternatively the new sentencing hearing as requested in argument two. Justice, do you have any questions for counsel? No. Thank you, counsel, obviously we will take this matter under advisement, and we will issue a disposition in the future. Thank you, counsel, have a great day, and be careful out there. Thank you, you too.